IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRYAN C.,[1]                                        Case No. 6:21-cv-00136-SB

                    Plaintiff,                      **OPINION AND ORDER**

          v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[2]

                    Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

        Bryan C. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of his applications for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C.

§ 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28

_____

        [1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

        [2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021, and is substituted as the defendant. *See* FED. R. CIV. P. 25(d)(1).

PAGE 1 – OPINION AND ORDER

U.S.C. § 636(c). For the reasons explained below, the Court reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence in the record.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I. PLAINTIFF'S APPLICATIONS

Plaintiff was born in August 1984, making him thirty-three years old on January 29, 2018, his alleged disability onset date. (Tr. 23, 55, 102.) Plaintiff has a general equivalency diploma and past relevant work experience as a survey worker, sawmill laborer, and survey

worker supervisor. (*Id.* at 23, 39, 47-48.) In his applications, Plaintiff alleges disability due primarily to chronic back pain, memory problems, brain damage, and bilateral hearing loss. (*Id.* at 56, 102.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on October 28, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 13.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing on July 23, 2020. (*Id.* at 34-54.) On August 10, 2020, the ALJ issued a written decision denying Plaintiff's applications. (*Id.* at 13-25.) On December 4, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any

of those steps, the claimant is not disabled. *See id*. at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

III.    **THE ALJ'S DECISION**

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 13-25.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 29, 2018, his alleged disability onset date. (*Id.* at 15.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[B]ilateral sensorineural hearing loss; left elbow tendonitis; lumbar degenerative disc disease status post January 2020 laminectomy; unspecified anxiety disorder, provisional diagnosis; cannabis use disorder, moderate severity; alcohol use disorder, in reported partial remission; opioid use disorder, in reported sustained remission; and depressive disorder versus bipolar II disorder[.]" (*Id.* at 15-16.)

At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 16.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, subject to these limitations: (1) Plaintiff can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, (2) Plaintiff can never climb ladders, ropes, or scaffolds, (3) Plaintiff "can be in a work environment with a noise level of [three] or below," (4) Plaintiff can "understand, remember, carry out and persist at simple, routine, repetitive tasks," (5) Plaintiff can "make simple work-related decisions," (6) Plaintiff can tolerate "few if any changes in the workplace," (7) Plaintiff cannot perform

"assembly-line pace work," and (8) Plaintiff can have no "more than occasional public contact." (*Id.* at 17.) At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work. (*Id.* at 23.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as a (1) "[t]ouch up screener," (2) "[t]able worker," and (3) "[g]auger." (*Id.* at 23-24.)

## DISCUSSION

Plaintiff advances three primary arguments in this appeal. First, Plaintiff argues that he is entitled to new hearing because the appointment and tenure of Andrew Saul ("Saul")—the acting Social Security Administration ("SSA") Commissioner at the time of Plaintiff's administrative hearing, the ALJ's decision, and the Appeals Council's denial of Plaintiff's request for review— was unconstitutional. (Pl.'s Opening Br. at 15-17.) Second, Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for discounting his symptom testimony. (*Id.* at 10-13.) Third, Plaintiff argues that the ALJ erred by failing to provide legally sufficient reasons for discounting the opinions of his treating physicians, Wael Ghacham, M.D. ("Dr. Ghacham") and Corbett Richards, D.O. ("Dr. Richards"). (*Id.* at 13-15.) As explained below, the Court reverses the Commissioner's decision because it is based on harmful error and is not supported by substantial evidence in the record.

## I.    PLAINTIFF'S CONSTITUTIONAL CHALLENGE

Plaintiff argues that he is entitled to a new hearing because the SSA decided his claims during the unconstitutional appointment and tenure of Commissioner Saul. (*See* Pl.'s Opening Br. at 15-17.)

The Ninth Circuit recently addressed and rejected a nearly identical constitutional challenge in *Kaufmann v. Kijakazi*, 32 F.4th 843, 850 (9th Cir. 2022). The Ninth Circuit held that Commissioner Saul's unlawful appointment had no impact on a disability claimant's case unless

the claimant can demonstrate actual harm. *See id.* ("[W]e hold that the removal provision in 42 U.S.C. § 902(a)(3) violates separation of powers; that the provision is severable; and that, unless a claimant demonstrates actual harm, the unconstitutional provision has no effect on the claimant's case.").

As in *Kaufmann*, Plaintiff fails to meet his burden of demonstrating actual harm here. *See* 32 F.4th at 850 (stating that "[n]othing in the record suggest[ed] any link whatsoever between the [relevant] removal provision and [the] [c]laimant's case[,]" the claimant's "argument rest[ed] solely on speculation that the Commissioner theoretically might have acted differently," and the claimant could not "meet her burden of showing actual harm with speculation alone" (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1795 (2021))). Accordingly, Plaintiff is not entitled to a new hearing. *See Daryl A. v. Kijakazi*, No. 2:21-cv-00423-SB, 2022 WL 1751392, at *2 (D. Or. May 13, 2022) (same), *report and recommendation adopted*, 2022 WL 1750727, at *1 (D. Or. May 31, 2022).

## II.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and

convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

B.    **Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 18, the ALJ explained that the "record supports" her determination that Plaintiff is "certainly limited in his ability to perform work activity"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ failed to satisfy that standard here.[3]

1.    **Applicability of Recent Ninth Circuit Caselaw**

In arguing that the ALJ erred in discounting his symptom testimony, Plaintiff compares the ALJ's analysis to a similar analysis in *Smith v. Kijakazi*, 14 F.4th 1108 (9th Cir. 2021), and asserts that *Smith* is "on point and controlling[.]" (Pl.'s Opening Br. at 11-12; Pl.'s Reply at 1.) The Court agrees.

---

[3] The ALJ separately addressed potential grounds for discounting Plaintiff's testimony about his back condition and mental health. (*See* Tr. 18-21.) The parties dispute only whether the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony about his back condition, and do not assert that the Court may affirm the ALJ's symptom analysis based on reasons related to Plaintiff's mental health. *See generally Garrison*, 759 F.3d at 1015 (observing that the claimant "testified about her physical and mental health," and therefore "separately address[ing] the ALJ's grounds for discrediting each part of [the claimant's] testimony"); *Evelyn E. v. Berryhill*, No. 17-1924, 2018 WL 5928371, at *4 (W.D. Wash. Sept. 28, 2018) (holding that the ALJ "failed to give clear and convincing reasons to discount [the] plaintiff's testimony about both mental and physical symptoms"); *Harrold v. Berryhill*, 714 F. App'x 861, 870-71 (10th Cir. 2017) (noting that the ALJ's discussion "relate[d] only to [the claimant's] physical symptoms" and the ALJ "made no findings specific to the . . . [claimant's] testimony and other statements regarding her mental symptoms . . . and did not give specific reasons for discounting them or cite specific evidence in support of his determination that they were not credible").

In *Smith*, the claimant alleged that as of December 2012, he could not work "due to mental health problems triggered by an acute grief reaction to the deaths of his fiancée, mother, and grandmother during a two-month period in fall 2012." 14 F.4th at 1110. The record showed that the intensity of the claimant's "symptoms varied substantially during the years following his alleged onset date and dramatically improved during the later years of the claimed disability period." *Id.* at 1111-13. On appeal, the Ninth Circuit held that substantial evidence supported the ALJ's finding that the claimant was not disabled at the time of the July 2018 hearing, but "nonetheless reverse[d] and remand[ed] . . . for further factfinding, since the ALJ did not adequately consider how [the claimant's] symptoms changed over time." *Id.* at 1110-13. In support, the Ninth Circuit noted that "[t]he ALJ ultimately discounted [the claimant's] testimony as not credible, concluding that it was inconsistent with the medical evidence." *Id.* at 1111. The Ninth Circuit explained that "[t]his was error" because the ALJ's "conclusion rested on [her] assessment of [the claimant's] testimony regarding his functioning at the time of the [July 2018] hearing, and she did not analyze [the claimant's] testimony regarding his capacities in past years." *Id.*

After recognizing that the clear and convincing reasons standard is "the most demanding required in Social Security cases," and that the ALJ's six-page discussion "synthesize[d] evidence from multiple clinical sources," "identified what the ALJ perceived as inconsistencies between the medical evidence and [the claimant's] testimony about his current capabilities," and discounted the claimant's "testimony that his mental health condition was responsible for his inability to work," the Ninth Circuit explained that "the ALJ's analysis [was] not clear and convincing in every respect." *Id.* at 1112 (simplified). Notably, the ALJ did "not sufficiently consider the duration of, or chronological fluctuation in, [the claimant's] symptoms," and did

"not adequately address th[e] progression [i.e., the claimant's symptoms 'varied, and generally improved, during the years following his onset date'] as it relate[d] to [his] credibility." *Id.* at 1112-13. The ALJ in *Smith* had asked the claimant only one question about "the first years of the disability claim immediately following the acute grief reaction" and instead focused on his current symptoms and events that "occurred after 2015," posed "few" questions to a medical expert that "distinguished clearly between various periods of time," and made "findings [that] permit[ted] the conclusion that [certain] record evidence corroborate[d] the portion of [the claimant's] testimony relating to his early-period disability." *Id.* at 1113. As a result, the Ninth Circuit found that the ALJ "erred by disregarding *all* of [the claimant's] testimony, including the portion about his early-period incapacity, on the basis of inconsistencies only clearly applicable to the late-period testimony," and "h[e]ld that the ALJ erroneously rejected . . . *early-period testimony*, since the ALJ provided no specific, clear, and convincing reasons to find th[at] portion of [the claimant's] testimony not credible." *Id.*

The parties dispute whether *Smith* supports a remand for further fact-finding here. (*See, e.g.*, Pl.'s Reply at 16.) Before addressing the parties' specific arguments, the Court notes that the parties do not dispute that *Smith* could apply here even though this case concerns the ALJ's analysis of Plaintiff's testimony about a physical condition, not a mental health condition, that changed over time. (*See* Pl.'s Opening Br. at 10-13; Def.'s Responsive Br. at 4-8; Pl.'s Reply Br. at 1-7, the Commissioner does not distinguish *Smith* on this ground and notes that Plaintiff's argument concerns the ALJ's analysis of his "musculoskeletal complaints," and Plaintiff makes a single passing reference to his "depression continu[ing] even after surgery"; *see also* Tr. 18, 600, the ALJ acknowledged that before Plaintiff had back surgery on January 2, 2020, there was

"perhaps [a] 6-7 month[]" period when he may not have been able to "perform work" consistent with the ALJ's RFC).

The Court also notes that the Ninth Circuit recently applied *Smith* in a case involving post-onset back surgery. *See Thomson v. Kijakazi*, No. 21-35152, 2022 WL 1239464, at *1 (9th Cir. Apr. 27, 2022) (holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's symptom testimony and explaining that to the extent the ALJ discounted the claimant's testimony based on "any alleged improvement in [her] treatment, the ALJ failed to square that with [the claimant's] pre-surgery symptoms which also f[e]ll within the alleged onset disability period" (citing *Smith*, 14 F.4th at 1114)); *see also Lynn T. v. Comm'r of Soc. Sec.*, No 19-1790-BR, 2020 WL 7699836, at *4 (D. Or. Dec. 28, 2020) (reflecting that the claimant alleged disability as of April 2014 due in part to sciatica and lumbar disc degeneration and "had back surgery in December 2017"), *vacated and remanded*, *Thomson*, 2022 WL 1239464, at *1-2.

Turning to the parties' specific arguments, the Commissioner asserts that Plaintiff's case "bears no resemblance to *Smith*," because the ALJ asked Plaintiff questions about his pre-surgery symptoms and post-surgery functioning, Plaintiff described his pre-surgery symptoms and cane use and why he later decided to undergo surgery, and the ALJ's decision "specifically acknowledged that [Plaintiff] had differing complaints at different points of time during the relevant period" and "distinguished complaints pre- and post-back surgery." (Def.'s Responsive Br. at 4.) The Commissioner suggests that unlike the ALJ in *Smith*, the ALJ here provided clear and convincing reasons for discounting Plaintiff's (1) pre-surgery testimony (i.e., Plaintiff "did not pursue surgery when it was initially offered," the objective medical evidence undermined Plaintiff's complaints, and Plaintiff's activities were "consistent with sedentary work"), and (2)

post-surgery testimony (i.e., Plaintiff "improved after surgery," Plaintiff "failed to follow through with treatment," and Plaintiff's "activities conflicted with his testimony"). (*Id.* at 4-8.)

Plaintiff acknowledges that the ALJ "fielded a few questions" from him "about [the] various periods" during the July 2020 hearing, and provided reasons for discounting his pre-surgery symptom testimony.[4] (Pl.'s Reply Br. at 2, 5-6, citing Pl.'s Opening Br. at 11-12.) Plaintiff, however, argues that the ALJ's reasons were not clear and convincing, as they failed "adequately to address the severity of his complaints pre-surgery." (*See, e.g.*, *id.* at 6.) Plaintiff also claims that the ALJ's flawed analysis is apparent at other steps, noting that her relevant step-two findings were limited to "lumbar degenerative disc disease status post January 2020 laminectomy," not a severe impairment of "pre-laminectomy lumbar disc disease," and her step-three findings suggest that she considered whether Plaintiff's back condition "met or equaled the

_____

[4] Plaintiff states that the ALJ gave these reasons for discounting his pre-surgery testimony: Plaintiff "initially decided to not risk surgery," "did not show up regularly for physical therapy," and "walked at one point more than he should have." (Pl.'s Reply Br. at 5, citing Pl.'s Opening Br. at 11-12.) As noted above, the Commissioner asserts that the ALJ appropriately discounted Plaintiff's post-surgery, not pre-surgery, testimony based on his failure consistently to participate in physical therapy. (Def.'s Responsive Br. at 4-8.) The Commissioner also responds to Plaintiff's physical therapy arguments in the portion of her brief titled "The ALJ reasonably discounted [Plaintiff's] complaints post-surgery." (*Id.* at 7-8) (bold omitted). Thus, it appears that the Commissioner agrees that even if the ALJ did discount Plaintiff's pre-surgery testimony on this ground, it was inappropriate to do so. (*Cf.* Tr. 351, July 9, 2018, Dr. Ghacham observed that Plaintiff had "not been doing well with physical therapy and once [it] caused him worsening pain"; *id.* at 353, 357, June 7, 2018, a medical provider noted that Plaintiff recently received osteopathic manipulative treatment ("OMT") but was "[u]nable to receive [OMT] at [his] follow-up . . . due to discomfort," could not "lie on [the] exam table," and reported that his home exercise program "caused a flare up of back pain and left sided radicular symptoms"; *see also id.* at 18, the ALJ stated that Plaintiff's "failure to consistently adhere to treatment" supports the RFC; *id.* at 19-20, the ALJ stated that she found Plaintiff's "very spotty adherence to physical therapy regimes both before and after surgery" to be "concerning," but only proceeded to cite and discuss (1) a record dated December 17, 2019, which reflects that Plaintiff canceled physical therapy classes about two weeks before he underwent back surgery and during a time when the ALJ concedes he could not perform work consistent with the RFC, and (2) post-surgery records from February, March, April, and May 2020).

listing of impairments *only after* [his] surgery." (*Id.* at 2-5, quoting Tr. 15-16, describing the severe post-surgery impairment, and finding that Plaintiff did not satisfy a musculoskeletal-related listing based, in part, on the level of ambulatory deficits, "particularly after surgery").

Having reviewed the briefs, longitudinal record, and the ALJ's decision, the Court agrees with Plaintiff that *Smith* applies in a case like this one, where the record reflects that the claimant suffered from a progressive physical impairment, culminating in surgery. *See Thomson*, 2022 WL 1239464, at *1. The Court also agrees that the ALJ's subjective symptom analysis is flawed and that the ALJ did not satisfy the clear and convincing reasons standard. *See Smith*, 14 F.4th at 1112 (reflecting that the Ninth Circuit has described the clear and convincing reasons standard as "the most demanding [standard] in Social Security cases") (simplified); *Garrison*, 759 F.3d at 1014-15 (explaining that the clear and convincing reasons standard is "not an easy requirement to meet").

The ALJ's decision reflects that "*except* for a period of perhaps 6-7 months" before Plaintiff's January 2020 back surgery (and post-January 2018 onset date), Plaintiff could perform the sedentary work described in the ALJ's RFC. (Tr. 17-18 (emphasis added); *see also id.* at 20, stating that even when his back symptoms "were at their worst in late 2019," Plaintiff reported engaging in activities "consistent with what would be required in a sedentary occupation (albeit not necessarily for 8 hours [i.e., a normal full-time workday])"). In other words, the ALJ concluded that (1) Plaintiff's symptoms varied substantially during the years after his alleged onset date, and (2) between June or July 2019 and January 2020 (i.e., a year and a half to two years after the alleged onset of disability), Plaintiff could *not* perform work consistent with the ALJ's RFC.

///

This finding "permit[s] the conclusion that th[e] record evidence corroborates the portion of [Plaintiff's] testimony relating to [June or July 2019 to January 2020]." *Smith*, 14 F.4th at 1113. The medical evidence discussed below also corroborates this portion of Plaintiff's testimony.

The question, then, is whether the ALJ failed to provide specific, clear, and convincing reasons for discounting the portions of Plaintiff's testimony about (1) January 2018 to June or July 2019 *or* (2) January 2020 to July 2020, as the ALJ's failure to do either would undermine her outcome-determinative finding that there is "no evidence [of] a 12-month period supporting an inability to engage in full-time sedentary work" (Tr. 20).[5] *See Smith*, 14 F.4th at 1113 (holding, in a case involving symptoms that varied substantially following the alleged onset date, that the ALJ erred in rejecting a certain portion of the claimant's testimony because the ALJ failed to provide specific, clear, and convincing reasons for discounting that portion of the testimony).

The Court first addresses the ALJ's findings about the portion of Plaintiff's testimony relating to January 2018 through June or July 2019. As explained below, the Court concludes that the ALJ committed harmful error.

### 2.    Plaintiff's Pre-Surgery Testimony

#### a.    Reported Activities

The Commissioner asserts that the ALJ appropriately discounted this portion of Plaintiff's testimony because he engaged in activities that "were consistent with sedentary work"

---

[5] The ALJ held the hearing on July 23, 2020 and issued a decision on August 10, 2020. (Tr. 25, 34.) Although the ALJ found that Plaintiff was not disabled "through the date of th[e] decision" (Tr. 25), the ALJ did not receive any symptom testimony relating to July 23 to August 10, 2020.

(i.e., the ALJ's RFC). (Def.'s Responsive Br. at 6, citing Tr. 19-20.) An ALJ may discount a claimant's symptom testimony based on activities that are incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) (explaining that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination"); *Garrison*, 759 F.3d at 1016 (stating that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"). However, substantial evidence does not support discounting Plaintiff's testimony on this ground.

The paragraph of the ALJ's analysis that focused on Plaintiff's reported activities includes one sentence related to January 2018 to June/July 2019: "[Plaintiff's] level of activity shows an ability to perform sedentary work, inconsistent with a finding of total disability[.] . . . Prior to his surgery, in early 2019, [Plaintiff] was capable of using the stove and oven to cook, shopping, washing dishes, sweeping, vacuuming, and limited yardwork, [all of which is] consistent with at least a range of sedentary work." (Tr. 20, citing Tr. 478.) The record the ALJ cited reflects that during a consultative psychological examination on March 28, 2019, Plaintiff "described himself as [a] homeless" man who "couch-surf[s] between various friends' homes" and was "currently staying with a friend in the friend's trailer[.]"[6] (Tr. 478.) Plaintiff "endorsed" an "ability to perform limited yard work" and an "ability to use the stove, oven and microwave independently, citing sandwiches and burritos as examples of foods he could prepare." (*Id.*) Plaintiff also stated that he has "some difficulty" getting dressed independently

---

[6] Plaintiff was also "staying in a shed" during the alleged period of disability and while recovering from back surgery. (*See* Tr. 613, 697, documenting Plaintiff's reports on January 16, 2020.)

"due to pain," he "washes dishes by hand without problems," he "sweeps and vacuums to help around the [trailer] and keep his friend's [trailer] clean," he "goes grocery or convenience store shopping regularly," and he "usually uses the pushcart in the grocery store, but has used the powered cart in the past." (*Id.*)

The Court is unable to conclude that substantial evidence supports the ALJ's suggestion that these activities are inconsistent with Plaintiff's testimony. *See generally Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (explaining that the claimant's "limited daily activities were not meaningfully inconsistent with her symptom testimony"). Notably, other than referencing "regular[]" trips to the store, the record cited includes no details about how often or how much time Plaintiff spends engaged in the activities the ALJ cited. Nor does it include any specific details about how long Plaintiff spent sitting, standing, or walking before needing to change positions, or whether Plaintiff needed to take any rest breaks.

That is significant because the function report Plaintiff completed on October 8, 2018 reflects that his "back problem makes it hard to sit, stand, or walk for lengths of time varying from 5-30 min[utes]," his "leg weakness and numbness . . . prevents [him] from walking and standing for [any] length of time without [his] walking cane," he prepares simple meals "1-2 times daily" for "3-5 min[utes]," his post-back injury "cooking habits [have] changed to . . . short cook times and simple meals," he spends "20 min[utes]" doing "small [and] short loads" of dishes "once every couple days when [he is] able to stand that long," he spends "2-3 hours" about every "week or two" washing his "4 pair of cloth[e]s," and "most [of the] other [house and yard] chores are done by [the] friends [he] stay[s] with [and he] help[s] when [he] can." (Tr. 273, 275-76.) As to shopping, Plaintiff's function report reflects that he shops "2-3 times a month [for] 30-40 min[utes] mostly at [a store where] [i]f needed [he can use] the sit and ride carts."

(*Id.* at 276; *see also id.* at 246, on September 26, 2018, Plaintiff reported that basic "home activities like dishes, dressing, tying shoes, etc.," have been "very problematic" after he re-aggravated his back in injury in 2017; *id.* at 375, on March 26, 2018, Plaintiff reported that getting dressed is "difficult at time[s] due to his chronic back pain" and he "help[s] w[ith] dishes" and "[d]oes not lift anything heavy").[7]

Unlike the record excerpts the ALJ cited, Plaintiff's function report includes important details and context about his reported activities, and undermines the ALJ's reliance on the cited activities. Furthermore, it is noteworthy that in a different portion of his report, the examining psychologist stated that his record review included "[a] claimant self-report" from the state agency, and the self-report cited "back and leg pain, noting difficulty with lifting and mobility," and "[s]ome limitations" with respect to activities of daily living ("ADLs"). (*Id.* at 475-76.) The psychologist observed that the ADLs report "appeared consistent with observed behavior." (*Id.* at 479.)

The Commissioner also notes that the ALJ's decision cites an April 2019 report about Plaintiff "doing a lot more walking than 'he should have been[.]'" (*Id.* at 19, quoting *id.* at 489; Def.'s Responsive Br. at 6, quoting Tr. 19, 489.) The cited record includes this report about walking, but it also states that Plaintiff's "past week ha[d] been rough" because he had "been in a lot of pain," and in February 2019, Plaintiff, who had "known chronic back pain with L5 radiculopathy," reported "[w]orsening disabling pain for the past 4-5 days." (Tr. 489.) The cited record also fails to address how much Plaintiff had been walking. (*See id.* at 489-93; *see also id.*

---

[7] Plaintiff has a documented "history of being hit by a motor vehicle [in 2004, which] left him with[, *inter alia*,] residual back pain." (Tr. 349; *see also id.* at 368, reflecting that Plaintiff has suffered from back "[p]ain since" 2004, when he was "hi[t] by a drunk driver while riding his bicycle").

at 366, on April 19, 2018, Dr. Ghacham, an orthopedic surgeon, stated that Plaintiff's pain was "[e]xacerbated by [p]rolonged walking, heavy lifting, [and] lifting with [his] back" and "[i]mprove[d] with rest, sitting, lying down, [and] positional changes"; *id.* at 273, 278, on October 8, 2018, Plaintiff reported difficulty walking for "lengths of time varying from 5-30 min[utes]," and needing to rest for "5-10 min[utes]" after walking "2-3 blocks" or "maybe 4-5" if "absolutely needed").

Given this evidence and on this record, the Court is unable to find that substantial evidence supports the ALJ's decision to discount Plaintiff's pre-surgery testimony based on his reported activities.

### b.    Plaintiff's Pursuit of Surgery

The Commissioner also argues that the ALJ appropriately discounted Plaintiff's pre-surgery testimony because he "did not pursue surgery when it was initially offered." (Def.'s Responsive Br. at 4, citing Tr. 19, 337, 487, 907.) As explained below, the Court disagrees.

In discounting Plaintiff's testimony, the ALJ made several observations about Plaintiff's pursuit of and decision to wait to undergo back surgery. Specifically, the ALJ observed that: (1) in August 2018, Dr. Ghacham "offered surgery as an option" and Plaintiff "declined surgery," even though his June 2018 magnetic resonance imaging ("MRI") showed "nerve root displacement," which an electromyogram ("EMG") "confirmed," (2) in February 2019, Plaintiff reported "debilitating pain, but he was still unsure if he wanted to go through with surgery," (3) Plaintiff "chose to pursue surgery" after a repeat MRI in November 2019, and (4) although Plaintiff's orthopedic surgeon "express[ed] reservations about how much surgery would improve [Plaintiff's] symptoms, it [was] still somewhat surprising that, if his symptoms were as severe as alleged, he kept delaying surgery." (Tr. 19, citing *id.* at 337, 424, 486, 489, 502, 762, 907-08.)

Substantial evidence does not support discounting Plaintiff's testimony based on these observations.

An ALJ may discount a claimant's testimony if he "delay[ed] needed surgery" due to a "logistical decision" or "personal preference." *See Overlund v. Berryhill*, No. 15-1670-SI, 2017 WL 1136674, at *6 (D. Or. Mar. 27, 2017) (noting that the claimant argued that "her decision to delay surgery was a 'logistical decision' that d[id] not discount her symptom testimony," and holding that the claimant's "'personal preference' to delay needed surgery was a valid basis for the ALJ to discount [her] subjective complaints" (citing *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012))); *see also Molina*, 674 F.3d at 1113-14 (rejecting the "claim that the ALJ erred in relying on [the claimant's] failure to seek or follow prescribed treatment," and noting that "there was no medical evidence that [the claimant's] resistance [to psychiatric treatment] was attributable to her mental impairment rather than her own personal preference"), *superseded by regulation on other grounds as recognized in Davis v. Kijakazi*, No. 21-3541, 2022 WL 2072656, at *1 (9th Cir. June 9, 2022).

However, in assessing a claimant's failure to pursue surgery, an ALJ must consider possible reasons for delaying or foregoing surgery, and the claimant's specific explanations. For example, in *Muang v. Kijakazi*, No. 20-9200, 2022 WL 867257, at *6 (N.D. Cal. Mar. 23, 2022), the ALJ discounted the claimant's testimony and, in doing so, emphasized that she "declined a second surgery to repair her re-torn right rotator cuff[.]" *Id.* After observing that surgery is an "aggressive treatment," which "cuts two ways" (i.e., surgery "hints at the severity" of an impairment and a decision to forego surgery may suggest that the impairment is tolerable), the district court noted that the ALJ "did not consider any explanations [the claimant] may have provided, *or other information in the case record*, for not pursuing surgery." *Id.* (emphasis

added). In fact, the ALJ did not consider "any explanations," inquire at the hearings about the claimant's reasoning, or issue a decision that addressed "what reasons [the claimant] may have had for refusing surgery." *Id.* at *7. As a result, the district court concluded that the ALJ erred in discounting the claimant's testimony based on her decision to decline a second surgery, noting that an ALJ must "consider possible reasons why [a] claimant did not seek or obtain treatment." *Id.* (quoting *Eitner v. Saul*, 835 F. App'x 932, 933 (9th Cir. 2021)).

The Court concludes that substantial evidence does not support the ALJ's decision to discount Plaintiff's testimony based on his decisions related to surgery. The ALJ did reference one potential reason why Plaintiff initially declined surgery (i.e., Dr. Ghacham expressed reservations about whether surgery would improve his symptoms), and inquired about Plaintiff's initial decision to wait on surgery. (*See* Tr. 44-45, "Q. And is there a reason that you decided not to do the surgery [in 2018] but you did in, after you went back to [Dr. Ghacham] in November of 2019? A. My symptoms had gotten significantly worse and it got to the point where I really couldn't do anything hardly at all. Laying down and sleeping just couldn't happen because I'd be laying in pain and trying to get up and walk anywhere was almost futile."). However, the Court finds this was insufficient.

The ALJ stated only that she found it "somewhat surprising" that Plaintiff' "kept delaying surgery" if "his symptoms were as severe as alleged." (Tr. 19.) The ALJ did not provide a persuasive reason for disregarding Dr. Ghacham's reservations about whether back surgery, which likely involves a number of surgical risks, would result in any symptom improvement, and failed adequately to address what role this may have played in Plaintiff's decision not to pursue surgery for sixteen months. (*See id.* at 502, Plaintiff reported to his physical therapist that Dr. Ghacham stated that undergoing surgery "may or may not help"; *see also id.* at 525-27,

Plaintiff's physical therapist noted that Plaintiff was "ambivalent" about surgery, Dr. Ghacham stated that the "pain may or may not improve" with surgery, and Plaintiff was "leaning towards surgery" but "aware" that his physical therapist believed surgery was "not the answer"; *id.* at 537, Plaintiff's physical therapist stated that Plaintiff was ambivalent about surgery because he had "been told there can be a possibility of things [that] may not go as he thinks that they may").

The ALJ also failed to explain why the reason Plaintiff articulated at the hearing was insufficient. Plaintiff testified that before surgery he suffered from fairly significant physical limitations: he was not "doing any real walking or sitting," he was "doing a lot of laying down [and] rolling around to get comfortable," he could not "walk very long," he used a cane at times, and he would "fall multiple times a day" because his left leg would "give loose" and collapse. (*Id.* at 44.) Plaintiff informed the ALJ that he decided to move forward with surgery in November 2019 because his "symptoms had gotten significantly worse," noting that "get[ting] up and walk[ing] anywhere [had become] almost futile" and pain impaired his ability to sleep. (*Id.* at 44-45.)

Plaintiff's testimony about how his back condition changed over time is consistent with the objective medical evidence. (*See* Tr. 244, the June 2018 MRI showed "nerve root involvement at L5-L5 and L5-S1, [which] may be correlating to worsening radicular symptoms"; *id.* at 583-85, Dr. Ghacham noted that Plaintiff reported worsening symptoms and was now "interested in surgical intervention" due to his "lack of improvement with conservative treatment," the November 2019 MRI showed "a worsening disc herniation on the left at L4-5 in comparison to his prior [imaging] from [June 2018]," Plaintiff's "left buttock and left lateral thigh pain are consistent with a left L5 radiculopathy from []his disc herniation," Plaintiff "now ha[d] slight weakness on the left to the tibialis anterior and [extensor hallucis longus]," and he

"recommend[e]d surgical intervention" given the "apparent new onset weakness as well as lack of symptomatic relief with conservative treatment"). Plaintiff's testimony also suggests that he may have believed that regardless of efficacy or whether "things . . . may not go as he thinks that they may" (*id.* at 537), he needed to take the risk and see if surgery "may improve" his back. (*Id.* at 486.)

The ALJ also failed adequately to address other valid reasons why Plaintiff may have waited to pursue back surgery. The record confirms that there are significant risks associated with back surgery, and it is unclear if Plaintiff and Dr. Ghacham discussed these risks before late 2019. (*See id.* at 585, describing risks of back surgery including a heart attack, stroke, death, blindness, and blood clots).

The Commissioner characterizes Plaintiff's claims that "he did not need to pursue surgery because the results were not guaranteed" and "his physical therapist talked him out of pursuing surgery" as "unpersuasive" and "simply alternative interpretations of the record." (Def.'s Responsive Br. at 5.) The Commissioner adds that late 2019 physical therapy records do not explain why Plaintiff declined surgery in August 2018 and February 2019. (*Id.*)

The Court finds these arguments unpersuasive. In August 2018 and February 2019, respectively, Plaintiff reported that he would "like to think about [his] options" before pursuing surgery and he was "still uncertain whether he want[ed] to proceed with surgery." (*Id.* at 337, 489.) Plaintiff made these reports on the same day and within six months of his consultation with Dr. Ghacham. Dr. Ghacham explained that although Plaintiff's 2018 MRI showed a "slightly bigger" and compressing "lumbar disc protrusion" and an EMG confirmed "chronic changes on the left," Plaintiff "may improve" but it was "unlikely that surgery [would] improve things dramatically." (*Id.* at 486.) Given Dr. Ghacham's reservations and area of expertise and

Plaintiff's subsequent discussions with his physical therapist, the only reasonable inference is that Plaintiff's uncertainty was largely due to his orthopedic surgeon's reservations about surgery. The ALJ stated that she found Plaintiff's decision to delay surgery for sixteen months to be "somewhat surprising" given the alleged symptom severity, but the ALJ needed to explain why she was surprised in light of all the potential reasons Plaintiff may have opted to delay. Absent such an explanation, the ALJ's statement that a sixteen-month delay was "somewhat surprising" does not amount to a reasonable, alternative interpretation of the record, as the Commissioner argues.

For these reasons, the ALJ erred in discounting Plaintiff's testimony based on his pursuit of back surgery. (*Cf.* Def.'s Responsive Br. at 5, citing *Durose v. Saul*, 846 F. App'x 453, 456 (9th Cir. 2021), a case where the Ninth Circuit found no error in the ALJ's failure to discuss an examination report that postdated the date last insured, recommended surgery, and noted that the claimant "would not be interested in surgery anyway" and "would rather live with" his condition).

### c.      Conflicting Medical Evidence

In arguing that the ALJ appropriately discounted Plaintiff's pre-surgery testimony, the only other reason the Commissioner cites is the ALJ's reliance on "objective medical findings specific to this [pre-surgery] period that undermined [Plaintiff's] complaints." (Def.'s Responsive Br. at 5.) In support, the Commissioner notes that Plaintiff did not start using a cane until August 2019, Plaintiff "could still walk with an antalgic gait without acute distress" in December 2019, and a May 2019 exam showed that Plaintiff "could walk with a slow gait," "had a negative straight leg raise test," and exhibited "intact sensation and reflexes."[8] (*Id.* at 5-6.)

---

[8] The Commissioner also maintains that the ALJ was "aided in the assessment of the evidence for this period" by the state agency physicians' opinions, which are "unchallenged by

The ALJ was required to provide specific, clear, and convincing reasons for discounting the relevant portion of Plaintiff's pre-surgery testimony, and inconsistencies with the objective medical evidence, or a lack of supporting medical evidence, cannot provide the sole basis for doing so. *See Smith*, 14 F.4th at 1113 (holding that "the ALJ erroneously rejected [the claimant's] *early-period testimony*, since the ALJ provided no specific, clear, and convincing reasons to find this portion of [the claimant's] testimony not credible"); *McClaren v. Saul*, 812 F. App'x 500, 501 (9th Cir. 2020) (explaining that "inconsistencies with objective medical evidence . . . cannot provide the sole basis for an ALJ's credibility determination"); *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (noting that "an ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason").

Given the significant, probative medical evidence discussed herein, and the ALJ's finding that there was a six- to seven-month pre-surgery period when Plaintiff could not perform work consistent with the ALJ's sedentary RFC, there is not substantial evidence in the record to support discounting Plaintiff's pre-surgery testimony based on objective medical evidence.

### 3.    Plaintiff's Post-Surgery Testimony

The Court does not address whether the ALJ also failed to provide clear and convincing reasons for discounting the portions of Plaintiff's testimony relating to January 2020 to July 2020. In light of the Court's conclusion that the ALJ erred by discounting Plaintiff's pre-surgery testimony relating to January 2018 to June/July 2019, there is not substantial evidence to support

---

[Plaintiff]. (*Id.* at 6.) However, the ALJ never asserted that she was discounting Plaintiff's testimony based on the state agency physicians' opinions. (*See* Tr. 18-21, discounting Plaintiff's testimony before turning to the medical opinions). The Court is constrained to review only the reasons the ALJ asserts. *See Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020).

the ALJ's outcome-determinative finding that there is "no evidence [of] a 12-month period supporting an inability to engage in full-time sedentary work" (Tr. 20).

### C.    Conclusion

For these reasons, the Court finds that the ALJ committed harmful error in discounting Plaintiff's symptom testimony, and in accordance with *Smith* and Plaintiff's request, remands this case for further fact-finding. (*See* Pl.'s Reply at 16, stating that the Court "should remand this case" and instruct the ALJ to "fully consider the entire longitudinal period of time . . . , focusing on [Plaintiff's] symptoms, the severity of those symptoms and the limitations stemming from those symptoms for the various time periods"); *see also Smith*, 14 F.4th at 1110 (remanding for further fact-finding because the ALJ failed adequately to consider how the claimant's symptoms "changed over time").

## III.    MEDICAL OPINION EVIDENCE

The Court does not address Plaintiff's arguments about the ALJ's treatment of any medical opinion because the parties agree that in the event the ALJ committed harmful error in discounting Plaintiff's testimony, the Court should remand for further proceedings. *See Jon M. v. Saul*, No. 19-1903-SB, 2020 WL 7495184, at *7 (D. Or. Dec. 21, 2020) ("The Court does not address Plaintiff's argument that the ALJ also failed to provide legally sufficient reasons for discounting Dr. Paulsen's opinion because, as explained below, this case will be remanded for further proceedings." (citing *Dasher v. Astrue*, No. 09-6139-BR, 2010 WL 4923101, at *7 (D. Or. Nov. 29, 2010))). The Court also notes that there remain potential conflicts in the record that the ALJ will need to resolve on remand.

///

///

///

## CONCLUSION

Based on the foregoing reasons, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 27th day of June, 2022.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge